IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MARK CASH                                                                                          PLAINTIFF

v.                                                                       CIVIL ACTION NO.1:11-CV-00154-SA-DAS

LEE COUNTY SCHOOL DISTRICT
AND STEVEN HAVENS, INDIVIDUALLY                                                      DEFENDANTS

## MEMORANDUM OPINION

Currently before the Court is Defendants' Motion for Summary Judgment [28]. Because the Court finds that there remains a genuine dispute of material fact regarding Plaintiff's First Amendment and Fourth Amendment claims, Defendants' Motion for Summary Judgment is denied as to the Plaintiffs' claims against Defendant Steven Havens. Because the Court also finds, however, that there remains no genuine dispute of material fact as to Plaintiff's municipal liability theory, Defendants' Motion for Summary Judgment as to the claims levied against Lee County School District is granted.

## FACTUAL BACKGROUND

Defendant Steven Havens, principal of Guntown Middle School, summoned student Noel Hall into his office February 12, 2010 and inquired whether Hall had posted a message on Facebook encouraging her classmates to wear blue jeans with holes in them to school. Upon receiving confirmation that Hall had done so, Havens informed her that she would be held accountable if her classmates did indeed wear such jeans in violation of the school dress code. Hall subsequently contacted her step-father, Mark Cash, and informed him of the potential disciplinary proceedings.

The Cashes raised their concerns about the potential punishment with Havens and the group convened for a conference in his office to discuss their grievance. The conference was attended by Havens, Mark and Tiffany Cash, Hall, and school secretary Teresa Long. Havens confirmed to Cash that he had personally informed Hall she would be punished if other students wore jeans with holes in them to school. Cash took issue with such action on grounds that he felt it was improper for Havens to view his step-daughter's Facebook profile and, regardless, felt that it was unfair to punish his step-daughter for the independent actions of other students. At some point in the conversation, the tension between the parties began to escalate and Havens directed the Cashes to leave his office. Cash, however, informed Havens that no resolution had been reached and he felt it necessary that some compromise be achieved before adjourning the meeting.

Havens insisted that the meeting be concluded and informed Cash that he would call the police unless Cash immediately left the premises. Havens then attempted to exit the office, walking around his desk and toward the exit behind the Cash family. As he was approaching Cash, Cash stood and called Havens a coward. Havens immediately had a staff member call the police. Cash then took his family members outside to wait on the police to arrive.

Upon their arrival, Cash identified himself to the two responding officers and attempted to explain the situation. Havens informed the officers that he wanted Cash arrested for disturbing the peace. Following a brief conversation with the parties, however, the officers determined that an arrest was unnecessary and allowed Cash to leave. Havens later signed an affidavit alleging that Cash had come onto school property and created a public disturbance. According to that offense report, Havens reported that "Mr. Cash placed his finger in [Havens'] face[,] called him a few names and told him to meet him outside."

On February 19, the Guntown Chief of Police, who had also responded to the disturbance allegations, telephoned Cash to advise him that the Municipal Court had issued a warrant for his arrest as a result of the incident. Cash agreed to voluntarily turn himself in and had a bondsman meet him at the police station. Cash was booked and then transported by two police officers to the home of Municipal Judge Pat Carr. The Municipal Court judge informed Cash of the charges against him and served him with papers informing Cash that he was barred from appearing at any Lee County schools. Cash was then transferred back to the station where he was immediately released on bond.

Although the underlying charge remained pending, Cash was allegedly informed that the order prohibiting him from frequenting Lee County School District property had been lifted and he was permitted to pick Hall up from school. Havens witnessed Cash on the premises and contacted the police in an attempt to have Cash arrested. After a convoluted exchange between Cash's attorney and the school district's attorney, Cash was allowed to leave the premises voluntarily, without police interference. Although police responded to Havens' report, Cash was not arrested or issued any sort of citation.

Cash eventually pled nolo contendere to the charge of disturbing the peace and then appealed the conviction to the County Court of Lee County. On March 8, 2011, the County Court of Lee County entered an Agreed Order of Dismissal with Prejudice whereby the charges were dropped. Cash has subsequently filed this § 1983 action, alleging that Defendants Lee County School District and Havens violated his First and Fourth Amendment rights provided by the United States Constitution.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

DISCUSSION

In order to recover under 28 U.S.C. § 1983, the plaintiff must prove two essential elements. The plaintiff must show that a person acting under color of state law engaged in the conduct about which he complains, and the plaintiff must also show that such conduct deprived him of rights, privileges, or immunities secured by the United States Constitution or the law of the United States. Parratt v. Taylor, 451 U.S. 527, 534, 101 S. Ct. 1908, 68 L. Ed. 265 (1981). In the case at hand, Cash contends that the Defendants' conduct violated his First Amendment and Fourth Amendment rights.

*First Amendment Claim*

Cash's First Amendment retaliation claim is premised on the theory that Havens sought to have him arrested in retaliation for criticizing the principal's actions. Consistent with this theory, it is well-established that the First Amendment "prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." Keenan v. Tejeda, 290 F. 3d 252, 258 (5th Cir. 2002) (citing Colson v. Grohman, 174 F.3d 498, 508 (5th Cir. 1999)). In order to succeed on a retaliation claim brought by an ordinary citizen, as opposed to a public employee, the plaintiff must show: 1) that he was engaged in constitutionally protected activity, 2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and 3) that the defendant's actions were substantially motivated by the plaintiff's exercise of the constitutionally protected activity. Id. (citation omitted).

The parties agree that the first prong is dispositive for purposes of Defendants' motion for summary judgment here, and the question is thus whether parental speech criticizing school

officials is protected by the First Amendment. Defendants, however, argue that in order to determine whether such speech is protected, the Court need turn to the public concern test. According to Defendants, in order to warrant First Amendment protection, Plaintiffs' speech must have dealt with matters of truly public concern as opposed matters of personal interest.

However, the public concern test is unique to retaliation claims brought by public employees and does not apply to private citizens such as Cash. Although the precise question has not been specifically dealt with by the Fifth Circuit, the Sixth Circuit has addressed a remarkably similar situation. In Jenkins v. Rock Hill Local School District, the plaintiffs were parents of children who felt that the school administration had treated their children unfairly by refusing to administer medical care related to the students' diabetes and suggesting that they be home-schooled. 513 F.3d 580, 584-86 (6th Cir. 2008). Following various complaints about the handling of the situation from the parents, the principal allegedly contacted the state children services administration to report possible child neglect. Id. at 584, 585. The principal allegedly informed one of the parents, "I told you I was going to involve Children Services… I don't like to be pushed around. I don't take that too lightly." Id. at 584. The district court, relying on the public concern requirement, determined that the parents' speech was of private concerns and was not protected by the First Amendment. Id. at 586.

The Sixth Circuit, however, reversed the district court's grant of summary judgment to the defendants, explicitly rebuking the course of action the present Defendants propose. The court stated, "[t]he public concern test originated in Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) and Connick v. Myers, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), in which the Supreme Court held the First Amendment protects from retaliation government employees who speak on matters of public concern." Id. That

holding, though, was limited to government employees as it was "based solely on the need to balance the free speech rights of government employees with the government's needs as an employer." Id. Such special concerns were not presented by a non-public employee parent complaining to school officials, and the court should have therefore applied the more general framework for determining whether speech is protected by the First Amendment. Id. at 588.

Such logic is consistent with the Fifth Circuit's jurisprudence as well, where "[t]here is ample support for constitutionally distinguishing government acting as employer from government acting as sovereign." United States v. Reyes, 87 F. 3d 676, 680 (5th Cir. 1996). The court has indeed noted that "[t]he role of the Government as an employer toward its employees is fundamentally different from its role as sovereign over private citizens generally." Id. (quoting Bush v. Lucas, 647 F.2d 573, 576 (5th Cir. 1981)). Furthermore, in specifically discussing the significance of Connick, the Fifth Circuit has explained that "[a]lthough the government acting in its role as sovereign may not punish a citizen for speech it dislikes, the government acting as employer may punish its employees for the same speech if it is not of public concern." Id. (citing Connick, 461 U.S. at 146-48, 103 S. Ct. at 1684); see also Blackburn v. City of Marshall, 42 F.3d 925, 933 (5th Cir. 1995) (determining that relationship between owner of towing service and city did not sufficiently resemble a quasi-public employment relationship so as to render public concern requirement applicable). Thus, the Court determines that the more general First Amendment framework should be used to determine whether the speech at issue here was protected.

As a general matter, speech is usually considered protected, with restriction placed only on limited types of speech such as obscenity, defamation, and fighting words. R.A.V. v. St. Paul, 505 U.S. 377, 382-83, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992). Criticism of public

7

officials, and of the policies for which they are responsible, lies at the very core of that speech protected by the First Amendment. See Colson, 174 F.3d at 507 (5th Cir. 1999).

In the case at hand, Cash scheduled a conference with Havens in order to discuss whether the proposed and threatened punishment for Hall was unfair. According to Cash, he "told him [he] felt it was wrong for [Havens] to punish [his] daughter for the actions of another kid." Cash further stated, "as far as I'm concerned I've got the right to, you know, argue my point about his decision to punish my daughter for the actions of other kids because I didn't feel it was right." Although Cash admitted in his deposition that the exchange became heated, he described it thusly:

> And then his voice got raised, my voice got elevated a little bit, but it was a heated discussion that we got into…And he asked me to leave the office. I didn't—we weren't screaming at one another, we were just—got in a heated discussion about it. He asked me to leave and that's when I told him I didn't want to leave until we got this resolved. And he told me that was going to call the police. And I said, "well, go ahead, call them," I said, "because I haven't done anything wrong." Well, he got up and I got up. And best I can remember he was heading out of the office and I did call him a coward because he wouldn't sit there man to man and talk this out and try to come to some, you know, resolution to it.

Based upon the submitted testimony of the parties, the Court is unable to discern any reason as to why such speech would not fall within the general protections of the First Amendment. Notably, Defendants have focused their attack solely on whether the speech of Cash was of public concern rather than whether it should be excluded from the general protections of the First Amendment based on obscenity, defamation, or fighting words. Although Havens asserts that Cash pointed his finger in Havens' face as he was leaving the office, that account is disputed by other sworn testimony. The Court therefore determines that Plaintiff has produced a prima facie case for a violation of his First Amendment right and summary judgment is inappropriate.

*Fourth Amendment Claim*

Cash additionally attempts to raise a § 1983 claim premised on the alleged violation of his Fourth Amendment rights. Indeed, although "causing charges to be filed without probable cause will not without more violate the Constitution…it is equally apparent that additional government acts that may attend the initiation of a criminal charge [*can*] give rise to claims of constitutional deprivation." Jennings v. Patton, 644 F.3d 297, 300 (5th Cir. 2011). One such attendant circumstance that may trigger a cause of action is presented when the accused is seized and arrested. Id.

Defendants premise their motion for summary judgment as to Plaintiff's Fourth Amendment claim solely on the theory that Plaintiff cannot succeed on such a claim because no arrest or seizure occurred. The Court therefore gauges only that aspect of Plaintiff's claim.

According to Defendants, the merits of Plaintiff's Fourth Amendment claim can be quickly summarized:

> An arrest occurred in name only. No law enforcement officer went to Cash's home and took him into custody. The Chief of Police called Cash, told him about the warrant, and asked him to come to the station. The Chief even told him what the bond would be so that Cash could immediately arrange for bail. Cash rode to the judge's house with the Chief and another officer. At no time did they restrain him with handcuffs or other restraints. When Cash returned to the station, his bondman posted bond, and Cash returned home.

Therefore, in the eyes of the Defendants, "this type of so-called 'seizure' simply will not support a Fourth Amendment claim." In support of this conclusion, Defendants rely particularly heavily on the Fifth Circuit's holding in Cuadra v. Houston Independent School District, in which the court articulated that the plaintiff could not recover because he had not shown that the arrest occurred "in an extraordinary manner unusually harmful to an individual's privacy or even

9

physical interests." 626 F. 3d 808, 813 (5th Cir. 2010) (quoting Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001)). That statement, however, was pertinent because probable cause existed for the arrest and it was thus reasonable absent such exacerbating factors. Here, however, Defendants assume for purposes of argument that probable cause was *lacking*. The presumption that the seizure was reasonable absent the presence of such exacerbating factors is therefore inapposite to the question here.

The question Defendants place before this Court is merely whether a seizure occurred. The general rule is that "[a]n officer seizes a person when he, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004) (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S. Ct. 1868, 20 L. Ed. 2d 628 (1989)). That restraint of freedom must be intentionally applied. Id. (citing Brower v. County of Inyo, 489 U.S. 593, 596-97, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). And, if the restraint is merely made by a show of authority, a seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).

In the case at hand, the Plaintiff was telephoned by the chief of police, who informed Cash that there was an outstanding warrant for arrest. Cash was offered the opportunity to report to the police station on his own volition rather than having police sent to his home to take him into custody. Following his arrival at the station, Cash was placed in a squad car with two police officers and was taken to the home of the municipal judge, who served him with a notice that he was not to frequent Lee County School District premises. He was then returned to the station and released on bond that same day. The Court finds that Cash was seized for purposes of his

Fourth Amendment protections. Defendants vigorously argue that the fact that Cash was neither placed in handcuffs or required to stay in jail shows that no seizure occurred. Even if the Court were to assume, however, that no physical restraint occurred, the Court determines that a reasonable person in similar circumstances would have felt that he was not free to leave. Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment claim is therefore denied.

*Municipal Liability*

It is well established that a city is not liable under § 1983 on the theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A municipality is liable only for acts directly attributable to it "through some official action or imprimatur." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy." See Monell, 436 U.S. at 691, 98 S. Ct. 2018. A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002) (citing Piotrowski, 237 F.3d at 578).

The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority. Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003). "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." Brown v. Bryan County, 219 F.3d 450, 462 (5th Cir. 2000). However, this "single incident exception" is extremely narrow and gives rise to municipal

liability only if the municipal actor is a final policymaker. Bolton v. City of Dallas, 541 F.3d 545, 548 (5th Cir. 2008) (citing Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005)).

In the case at hand, Cash does not allege that there was an officially adopted policy ratifying the acts of Havens. Nor does he even allege that Havens had a custom of acting as he did in the present case. Instead, Cash seems to attempt to confer liability to the school district for Havens' singular decision to allegedly file a false report to the police. Cash argues, "While a principal at another school in the Lee County School District may have treated a similar fact situation in one manner, Principal Havens could treat that same fact situation at his school in another manner as long as it stayed within the official policy of the Lee County School Board. As such, the Plaintiff believes that Principal Havens had the authority to confer liability upon the Lee County School Board to some degree." Further, he argues, "Principal Steven Havens had been impliedly delegated certain authorities as the final authority at the Guntown Middle School. By acting in an unconstitutional manner, his actions can very well be attributed to the Lee County School District."

Cash, however, overlooks the significant distinction between final decision-making and final policy-making. See Bolton, 541 F. 3d at 548-50. In order to hold the municipality liable, Cash need show that Havens was a final policy-maker. At the summary judgment stage, the non-movant is required to go beyond the pleadings and designate specific facts supporting the necessity of a trial. Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. Cash has placed no specific facts or policies before the Court which give rise to a finding of liability against the municipality under the inquiry of Monell. The Court therefore grants Defendants' motion for summary judgment as to the municipal liability of Defendant Lee County School District.

CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment as to Plaintiff's First and Fourth Amendment claims is denied, while Defendants Motion for Summary Judgment as to the liability of Defendant Lee County School District is granted.

So ORDERED on this, the 28th day of December, 2012.

**/s/   Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**